# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 2:13cv824 **Electronic Filing** |
| KAREN A. BIDDLE and DAWN C. EDWARDS, | ) ) ) | |
| Defendants. | ) | |

## OPINION

State Farm Mutual Automobile Insurance Company ("plaintiff" or "State Farm") filed this action seeking a declaratory judgment that it does not have a duty to defend and/or indemnify under a policy of insurance providing motorist coverage to defendant Dawn C. Edwards. The underlying lawsuit from which plaintiff seeks to absolve itself of any coverage obligation is an action in the Court of Common Pleas of Allegheny County, Pennsylvania, commenced by defendant Karen A. Biddle ("Biddle" or "Karen Biddle") against Dawn C. Edwards and James E. Edwards at Biddle v. Edwards et al., GD 11 – 0011796. That action is ready for trial but has been stayed pending resolution of this declaratory judgment action. Presently before the court is Biddle's motion to stay this action until the underlying state court action is resolved. For the reasons set forth below, this court will decline to exercise its discretionary authority under the Declaratory Judgment Act pursuant to State Auto Ins. Companies v. Summy, 234 F.3d 131 (3d Cir. 2000) and its progeny. Accordingly, this action will be dismissed for want of subject matter jurisdiction and without prejudice to (1) plaintiff refiling its complaint for declaratory judgment in state court as authorized by 42 Pa. C. S. § 5103(b) and (2) defendant(s) raising any defenses they may have to that claim in state court.

In the underlying lawsuit Biddle filed an action against plaintiff's insureds, Dawn and

James Edwards. The lawsuit arises from a November 9, 2009, multi-vehicle accident that occurred in Allegheny County, Pennsylvania on Interstate 79. Biddle was a passenger in a vehicle being driven in the northbound lane of Interstate 79 by her mother, Cheryl Biddle. The vehicle became involved in a minor accident due to stopped traffic. The vehicle became disabled. Biddle and her mother were exiting the vehicle. At that time Dawn Edwards also was traveling in the northbound lane of Interstate 79 at a high rate of speed and came upon the stopped traffic from the minor accident. Without warning or slowing down, the Edwards' vehicle struck the Biddles' disabled vehicle at a high rate of speed, causing it to become airborne. The airborne vehicle spun through the air in a counter-clockwise direction and struck, crushed and killed Cheryl Biddle. Karen Biddle, Cheryl's only child, was standing close to Cheryl and narrowly was missed by the flying vehicle. She directly observed the event and the death of her mother. She suffered cervical strain and contusions among other forms of physical and psychological trauma and injury during the event.

The underlying action was initiated on June 28, 2011. On July 27, 2011, plaintiff made a determination to defend the Edwards pursuant to a reservation of rights. The case progressed until it was set for trial on the March 19, 2013, call of the list. It was then continued to the next trail term, and thereafter set for the call of the list on September 20, 2013.

Plaintiff filed the instant action in this court on June 18, 2013. On July 15, 2013, Biddle filed a motion in the underlying lawsuit asserting that in the instant action State Farm is seeking to absolve itself of the duty to defend and indemnify "for any emotional distress damages" and representing that "the parties [were] seeking a Continuance in order to secure a ruling in the Declaratory Judgment action before going to the time and expense of litigating the [underlying] tort claim." Joint Motion for Continuance at ¶ 4. Judge Folino granted the motion and continued the trial generally.

Biddle filed a motion to stay in the instant action on September 10, 2014, averring that

2

through the federal court filing State Farm is attempting "to insulate itself from potential excess liability before trail in the underlying action" by asking for "a decision regarding its insurance coverage obligations on material facts that remain unsettled, and in doing so, supplant[ing] the jury as finder of fact in the Underlying Action." Karen A. Biddle' Motion to Stay (Doc. No. 19) at ¶ 8. Biddle explains that State Farm contends that she did not suffer a form of "bodily injury" needed to trigger coverage and as a result State Farm asserts it is entitled to a declaration that coverage does not exist under the subject policy.

Biddle counters that the complaint in the underlying lawsuit avers that she "sustained severe physical and psychological trauma and injuries, including cervical strain, contusions and physical and psychological trauma and injury with resultant Post Traumatic Stress Disorder and Post Traumatic Depression." Id. at ¶ 3. These averments assertedly are enough to trigger State Farm's duty to defend and have it continue to do so until the jury in the underlying action decides "the factual questions that will determine State Farm's coverage obligations under the Policy." Id. at ¶ 17. From Biddle's perspective "State Farm's 'end-around' approach, which is decidedly self-protective, would require this Court to decide the very same facts that are at the crux of the Underlying Action and which are to be determined by the jury [in that lawsuit]." Biddle thus requests an order of stay be entered until the underlying lawsuit is resolved.

State Farm opposes the motion. From its perspective a stay would unfairly prejudice its "right to determine whether it is obligated to defend Ms. Edwards in the underlying [lawsuit]" and the precedent cited by plaintiff is distinguishable and fails to support a stay in any event. Plaintiff's Response in Opposition (Doc. No. 21) at 3.

State Farm recounts the general facts summarized above and advances the following assertions to support its position on coverage and the need to proceed with this declaratory judgment action. Biddle does not aver in the underlying lawsuit that she herself was struck by the Edwards/flying Biddle vehicles. The policy of insurance was issued in Indiana to an Indiana

3

resident. Under Pennsylvania choice of law provisions the subject policy ultimately will be governed by Indiana law. The Indiana Supreme Court has held "that emotional distress damages arising from witnessing a substantial injury or death to a loved one does not constitute 'bodily injury' under [the applicable policy language]." Plaintiff's Brief in Opposition (Doc. No. 21) at 5 (quoting State Farm Mut. Auto Ins. Co. v. D.L.B., 881 N.E.2d 665 (Ind. 2008)). Thus, State Farm interprets D.L.B. to mandate that Karen Biddle must have been struck by the Edwards and/or Biddle flying vehicle(s) in order to trigger its duty to defend under Indiana law. Id. at 6 ("The lack of physical impact between Ms. Biddle and either of the vehicles involved precludes a finding that Ms. Biddle's alleged damages constitute 'bodily injury' under the Edwards' automobile policy.") (citing D.L.B., 881 N.E.2d at 666).

Assuming for the sake of argument that Indiana law applies, it appears that Indiana law is in accord with Pennsylvania law on an insurer's duty to defend. Judge Springmann recently summarized the general principles of Indiana law governing a carrier's duty to defend:

> The insured is required to prove that its claims fall within the coverage provision of her policy, but the insurer bears the burden of proving specific exclusions or limitations to policy coverage. See Erie Ins. Group. v. Sear Corp., 102 F.3d 889, 892 (7th Cir. 1996) (applying Indiana law). An insurer's duty to defend its insureds against suit is broader than its coverage liability or duty to indemnify. Walton v. First Am. Title Ins. Co., 844 N.E.2d 143, 146 (Ind. Ct. App. 2006); Trisler v. Ind. Ins. Co., 575 N.E.2d 1021, 1023 (Ind. Ct. App. 1991). Although an insurance company can limit its duty to defend, cf. Walton v. First Am. Title Ins. Co., 844 N.E.2d 143, 147 (Ind. Ct. App. 2006) (stating that if the pleadings reveal that a claim is excluded under the policy, then no defense is required), an insurer is generally obligated to defend its insured against suits alleging facts that might fall within the coverage of the policy, Fed. Ins. Co. v. Stroh Brewing Co., 127 F.3d 563, 566 (7th Cir. 1997). The insurer's duty to defend is determined from the allegations of the complaint and from those facts known to or ascertainable by the insurer after reasonable investigation. Trisler, 575 N.E.2d at 1023.

Westfield Ins. Co. v. Hill, 790 F. Supp.2d 855, 860-61 (N.D. Ind. 2011). These principles essentially are in accord with Pennsylvania law on the subject. See, e.g., General Accident Ins. Co. of America v. Allen, 692 A.2d 1089, 1095 (Pa. 1997); Lucker Manufacturing v. The Home

4

Ins. Co., 23 F.3d 808, 813 (3d Cir. 1994); USX Corp. v. Adriatic Ins. Co., 99 F. Supp.2d 593, 611 (W.D. Pa. 2000).

State Farm seeks shelter under what it perceives to be the *sine qua non* of the policy's definition of bodily injury: physical injury. More specifically, it maintains that in order to trigger its coverage obligations Karen Biddle must show that she suffered physical injury from the Edwards/flying Biddle vehicles and the record in the underlying lawsuit does not make that showing.

In support State Farm points out that in D.L.B. the Supreme Court of Indiana held that the emotional distress a young boy suffered as a result of witnessing his cousin's accidental death when they were both riding bicycles was not a form of covered bodily injury as defined under State Farm's policy. D.L.B. was not himself "physically injured" when he witnessed his cousin being struck and killed by a motor vehicle, but he did thereafter developed Post Traumatic Stress Disorder. D.B.L., 881 N.E.2d at 666. And although the Supreme Court of Indiana decided in a companion case that the term "bodily injury" as defined in the policy can include emotional distress, State farm Mut. Auto. Ins. Co. v. Jakupko, 881 N.E.2d 654, 658 (Ind. 2008), it specifically held that the emotional distress damages had to arise from "a bodily touching." Id. (citing Wayne Township Board of School Commissioners v. Indiana Insurance Co., 650 N.E.2d 1205 (Ind. Ct. App. 1995) ("bodily touching . . . inherent to child molestation and the resulting emotional injury suffered by the victim of child molestation is bodily injury"). The physical manifestations produced from D.B.L.'s emotional distress were not in themselves sufficient to constitute "bodily injury" because "they were not the result of an impact, force, or harm to D.L.B.'s body and so [did] not fall within the ambit of Wayne Township." Id. Instead, the court analogized the case to Armstrong v. Federated Mut. Ins. Co., 785 N.E.2d 284 (Ind. Ct. App. 2003), where "the parents of a child killed in an automobile accident could not recover under the uninsured motorist coverage of their insurance policy because they had not 'suffered a

physical impact in the accident that took [their daughter's] life.'" Id. (quoting Armstrong, 785 N.E.2d at 293).

The Court of Appeals of Indiana has observed that injuries sufficient to support a negligent infliction of emotional distress claim ("NIED claim") do not necessarily fall within the scope of "bodily injury" needed to trigger coverage unless the emotional trauma flows from a bodily touching or "a physical impact of some kind." Taele v. State Farm Mut. Auto. Ins. Co., 936 N.E.2d 306, 311 (Ind. Sup. Ct. 2010). There, the parents of a thirteen year old child witnessed the death of their daughter when the vehicle she was riding in was struck by an uninsured motorist whose vehicle had crossed the median. The parents were traveling in one vehicle and their daughter was in the vehicle directly behind them. Neither parent suffered a direct physical impact or bodily touching during the accident.

As part of its analysis the Taele Court observed that the Indiana Supreme Court had expanded the scope of a NIED claim in Shuamber v. Henderson, 579 N.E.2d 452 (Ind. 1991). There, a mother and sister were in an automobile accident which resulted in the death of their son and brother, respectively. The mother claimed emotional trauma as a result of being involved in the impact and witnessing her son's fatal injuries. In considering a challenge that the mother's claim was beyond the scope of a NEID claim, the court opined:

> When . . . a plaintiff sustains a direct impact by the negligence of another and, by virtue of that direct involvement sustains an emotional trauma which is serious in nature and of a kind and extent normally expected to occur in a reasonable person, . . . such a plaintiff is entitled to maintain an action to recover for that emotional trauma without regard to whether the emotional trauma arises out of or accompanies any physical injury to the plaintiff.

Id. (emphasis added). The court reasoned that the mother sustained a "direct impact" in the accident because she was inside the vehicle when it was struck by another vehicle and thus she was entitled to present evidence that her emotional trauma was the result of being involved in the accident, as opposed to being the normal reaction of a mother who tragically lost her son (which

6

would not be recoverable).  Id.  Likewise, the sister of the fatally injured passenger was directly involved in the impact and if she were "able to prove that she sustained a mental trauma as a result of observing her brother's fatal injury," then "she, too, [could] recover for that emotional trauma."  Id.  Thus, under Shaumber sustaining a direct impact from the course of events set in motion by a defendant's negligence is all that is required to recover for emotional trauma pursuant to a NIED claim.

The Taele court further explained that the Supreme Court of Indiana has expanded the scope of a NIED claim even beyond Shaumber.  It has permitted a plaintiff to seek recovery on a NIED claim where the plaintiff cannot meet the direct impact test but nevertheless can show "'direct involvement' by proving that the plaintiff actually witnessed or came on the scene soon after the death or severe injury of a loved one with a relationship to the plaintiff analogous to a spouse, parent, child, grandparent, grandchild, or sibling caused by the defendant's negligent or otherwise tortuous [sic] conduct."  Id. (quoting Groves v. Taylor, 729 N.E.2d 569, 573 (Ind. 2000)).  The parents' NIED claim in Taele fell under Groves' "direct involvement" rule as opposed to Shaumber's "direct impact" rule "given that they did not sustain any 'direct impact' in the accident that killed their daughter."  Id. at 308.

The Taele court further observed that the Supreme Court of Indiana more recently has "undertaken a thorough examination of the intersection of NIED claims and [Indiana's Uninsured Motorist] provisions, both as a matter of insurance policy interpretation and of statutory construction, beginning with State Farm Mutual Automobile Insurance Co. v. Jakupko, 881 N.E.2d 654 (Ind. 2008)."  Taele, 936 N.E.2d at 308.  When considering alleged injuries that clearly fit within Shaumber's requirement of direct impart, "the court [in Jakupko] concisely stated that the definition of 'bodily injury' included emotional distress damages, but only if that distress arose from a bodily touching or direct physical impact."  Id. at 308-09 (citing Jakupko, 881 N.E.2d at 658-59).  Similarly, "[i]n Elliott v. Allstate Insurance Co., 881 N.E.2d 662 (Ind.

2008), the court again permitted physically injured occupants of a vehicle involved in an accident to recover UM benefits for emotional distress damages associated with witnessing another occupant's nearly fatal injuries." Taele, 936 N.E.2d at 309. In Jakupko and Elliott the Court referenced the required showing as one of "bodily touching" or "direct physical impact" and not one of "physical bodily injury," although the respective plaintiffs "did evidently sustain physical bodily injuries of some kind in the accidents in addition to emotional distress." Taele, 936 N.E.2d at 310 n. 2.

In contrast, the court has continued to construe NIED claims to be beyond the scope of bodily injury coverage where there is not a direct physical impact or a bodily touching. Id. (citing D.B.L., 881 N.E.2d at 666 and Bush v. State Farm Mutual Automobile Ins. Co., 905 N.E.2d 1003, 1005 (Ind. 2009). But as the Taele aptly has noted, the issue of whether a victim who merely has endured a "direct impact from the accident (as in Shuamber)" but has not sustained a "bodily touching" or "direct physical impact" can satisfy the requirement of "bodily injury" remains an open question under Indiana law. Id. at 310 n. 2 ("Jakupko, Elliott, D.L.B., and Bush arguably are unclear as to whether a physical bodily injury to an insured is required in order to recover any damages for emotional distress caused by witnessing harm to another person, or whether a mere direct impact from the accident (as in Shuamber) is sufficient."). The majority in Taele held that coverage was not available because the plaintiffs had not sustained any form of physical impact from the defendant's negligence. Id. at 311.

The issue presented by State Farm's position in the instant action is whether Karen Biddle sustained an adequate form of "an impact, force, or harm to [her] body" so as to bring her emotional trauma and injuries within the scope of the "bodily touching" component of Wayne Township or the "direct physical impact" recognized in Jakupko. If she has not, then the unsettled issues of whether either the "direct impact" component of Shuamber or the "direct involvement" requirement in Groves can suffice to trigger coverage for bodily injury under

8

Indiana law will have to be considered.

It is clear that this inquiry cannot be resolved by a mere review of the complaint in the underlying state action. In the underlying action Biddle has alleged that she and her mother "were *getting out* [their] Disabled Vehicle" when the Edwards vehicle struck it at a high rate of speed and caused it to become airborne, spin counterclockwise and strike, crush and kill the decedent. Karen A. Biddle v. Dawn C. Edwards and James E. Edwards, GD 11-0011796 (Doc. No. 1-2 in 2:13cv824) at ¶¶ 8-10 (emphasis added). Biddle was standing next to her mother and was narrowly missed by the "Disabled Vehicle as it flew through the air." Id. at ¶¶ 10-11. Biddle "sustained physical, psychological and emotional injury and associated disease[] and mental anguish, damages and losses . . . ." Id. at ¶ 13. Her asserted injuries include "cervical strain, contusions, physical and psychological trauma and injury" as well as depression, anxiety and post-traumatic stress disorder. Id. at ¶¶ 17(a) – (j). She has suffered physical as well as emotional pain and suffering which has required medical and pharmacological treatment. Id. at ¶ 18. Thus, the complaint contains allegations that plaintiff suffered direct physical injury in the form of among other things cervical strain and contusions.

State Farm seems to extrapolate from the averment that Biddle was "narrowly missed by the Disabled Vehicle as it flew through the air" that Biddle did not suffer a "direct physical impact" or "bodily touching." But it is clear from the averments of the complaint that Biddle did suffer physical injury, including cervical strain, contusions and physical trauma. What is unclear is the precise moment(s) when these physical injuries occurred. Were they during the initial minor accident or while attempting to get out of the way of the Edwards/flying Biddle vehicle? If the former, was the series of events so close in time and interconnected that they cannot be divided into two separate events? If the latter, did they come about from contact with something set in motion by the Edwards/flying Biddle vehicles? For example, did Karen Biddle have contact with her mother at the time she was struck, crushed and killed by the flying

Biddle vehicle? Did she attempt to get out of the way with such urgency that she strained her neck and fell, causing various strains and contusions? It appears that there are a number of scenarios wherein Karen Biddle may be able to satisfy the requirements of a bodily touching or direct physical impact in the accident. It also appears that in any event she may be able to establish circumstances that provide a strong case for consideration of whether a scenario depicting "direct impact" within the meaning of Shuamber or "direct involvement" within the meaning of Groves should be recognized as sufficient to trigger bodily injury coverage under Indiana law.

All of the above questions remain open and the record leaves a great deal of uncertainty about what happened and the concomitant questions regarding the availability of coverage. What is clear is that State Farm cannot confine the allegations of the complaint solely to forms of injury that are outside the settled definition of bodily injury under Indiana law and it will require further development of the record to resolve the uncertainty as to coverage.

Biddle seeks a stay of this action on the ground the State Farm prematurely and inappropriately is seeking "to insulate itself from potential excess liability before trial in the Underlying Action, [and is asking] this Court now to render a decision regarding its insurance coverage obligations on material facts that remain unsettled." Karen Biddle's Motion to Stay (Doc. No. 19) at ¶ 8. Biddle asserts that "State Farm's State Farm's instant request for declaratory relief necessarily rests on resolution of factual issues currently being litigated in the Underlying Action" and as a result "State Farm's instant request for declaratory relief regarding its coverage obligations is, at best, premature . . . ." Id. at ¶¶ 9, 18. She observes that moving forward with the instant action "would require this Court to decide the very same facts that are at the crux of the Underlying Action" and create the very real risk of generating inconsistent determinations as to the underlying facts and thus whether her injuries fall within the scope of coverage. Id. at ¶¶ 19-20. Thus, from her perspective "no certainty will be realized by

permitting State Farm to litigate now regarding insurance coverage obligations that should only be determined once the jury decides the facts in the Underlying Action."[1]

State Farm counters that the instant matter is indistinguishable from D.L.B. Plaintiff's Response in Opposition (Doc. No. 21) at 6. It asserts that "neither the vehicle operated by Dawn Edwards, nor the Biddle vehicle physically struck Karen Biddle" and it reasons that "whether Ms. Biddle's underlying claim is covered hinges on the objective standard of whether or not she was struck by the vehicle that killed her mother." Id. It denies that "the necessity of a fact specific determination with the potential for overlap by the state and federal court" exists and it reasons that the requested declaratory relief will allow the respect parties "to analyze their respective exposure" and "will allow for judicial determination of State Farm's obligation to defend Ms. Edwards in the underlying state court action." Id. at 7.

As explained above, careful consideration of Indiana law and the allegations and issues of fact as they currently exist in the underlying action make clear that the coverage inquiry cannot be reduced to the simple question of whether Karen Biddle was struck by the Edwards vehicle or the flying Biddle vehicle that it set in motion. Karen Biddle was not a distant or removed observer of the accident and the determinations of how she came to have suffered cervical strain and contusions in the course of the accident and the relation of such injuries to the determinations of coverage under Indiana law create open and unsettled factual matters and

---

1 In this regard Biddle asserts:

State Farm has expressed its intention to engage in duplicative litigation by deposing Biddle in this action despite the fact that she has already been deposed in the Underlying Action. That process was extremely difficult for Ms. Biddle as it forced her to relive the horrific and violent circumstances that led to her mother's death. That process created significant stress, anxiety and depression for Ms. Biddle in the weeks leading up to and in the weeks following her deposition, and for this reason alone among others State Farm's proposed duplicative litigation is certainly unnecessary now.

Id. at ¶ 21.

concomitant legal assessments.

Moreover, these unsettled factual matters and concomitant legal issues go beyond simply making a stay appropriate. They provide a sound basis for declining to exercise jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq. ("the DJA").

It is well-established that the DJA "'confers a discretion on the courts rather than an absolute right upon the litigant.'" Summy, 234 F.3d at 134 (quoting Wilton v. Seven Falls Co., 515 U.S. 277, 287 (1995)). The exercise of this discretion is "governed by 'considerations of practicality and wise judicial administration.'" Reifer v. Westport Ins. Co., 751 F.3d 129, 139 (3d Cir. 2014) (quoting Wilton, 515 U.S. at 288). These principles generally call for a policy of restraint where "another proceeding [is] pending in state court in which all the matters in controversy between the parties [can] be fully adjudicated." Id. (quoting Brillhart v. Excess Ins. Co. of America, 316 U.S. 491, 495 (1942). "Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided." Id.

The United States Court of Appeals for the Third Circuit has identified four general factors to consider in deciding whether to exercise jurisdiction under the DJA:

(1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy;

(2) the convenience of the parties;

(3) the public interest in settlement of the uncertainty of obligation; and

(4) the availability and relative convenience of other remedies.

Reifer, 751 F.3d at 140 (citing United States v. Pa., Dep't of Envtl. Res., 923 F.2d 1071, 1075 (3d Cir. 1991) (citing Terra Nova Ins. Co. v. 900 Bar, Inc., 887 F.2d 1213, 1224 (3d Cir. 1989)). In addition, "the use of the declaratory action as a method of procedural fencing, or as a means to provide another forum in a race for res judicata" is to be avoided. Id. (citing Terra Nova, 887 F.2d

at 1225 (quoting 6A J. Moore, J. Lucas & G. Girtheer, Jr., Moore's Federal Practice ¶ 57.08[5], at 57–50 (2d ed.1987)).

Moreover, requests for declaratory judgment in the insurance context give rise to additional "relevant considerations" in determining whether jurisdiction should be exercised under the DJA:

(1) A general policy of restraint when the same issues are pending in a state court;

(2) An inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion; and

(3) Avoidance of duplicative litigation.

Reifer, 751 F.3d at 140 (quoting Summy, 234 F.3d at 134) (quoting Pa., Dep't of Envtl. Res., 923 F.2d at 1075)). In addition to the Brillhart factors, these general and non-exclusive principles are to be given meaningful consideration in arriving at a sound and reasoned decision regarding the exercise of jurisdiction under the DJA.

Furthermore, the mere existence or non-existence of underlying parallel litigation is not controlling. Id. at 144 ("it is not a per se abuse of discretion for a court to decline to exercise jurisdiction when pending parallel state proceedings do not exist. Nor is it a per se abuse of discretion for a court to exercise jurisdiction when pending parallel state proceedings do exist.").[2] To the contrary, "the existence or non-existence of pending parallel state proceedings is but one factor" to be considered. But the existence of such proceedings can militate significantly in favor of declining jurisdiction and the exercise of jurisdiction in such a setting should only be undertaken where a rigorous consideration of the attendant circumstances provides reasoned justification for the exercise of jurisdiction at the expense of the factors counseling a policy of restraint. Id. at

---

[2] "The Supreme Court has described a 'parallel' proceeding as 'another proceeding . . . pending in a state court in which all the matters in controversy between the parties could be fully adjudicated.'" Reifer, 751 F.3d at 137 n. 9 (quoting Brillhart, 316 U.S. at 495).

144-45 ("This same rationale applies when state proceedings do exist. The existence of pending parallel state proceedings militates significantly in favor of declining jurisdiction, although it alone does not require doing so. In this circumstance, as part of exercising sound and reasoned discretion, district courts exercising jurisdiction should be rigorous in ensuring themselves that the existence of pending parallel state proceedings is outweighed by opposing factors.)).[3]

Consideration of the above guiding factors counsels in favor of declining jurisdiction. First, a parallel state court proceeding does exist. Resolution of the underlying tort action requires an adjudication of the factual issues that gave rise to Karen Biddle's tort claim(s) against the Edwards, *i.e.*, the specific details of how the accident occurred and whether Karen Biddle's injuries were caused in such a manner as to bring them within the scope of recovery under Indiana's NIED law. This inquiry and factual resolution will encompass the resolution of the facts that will dictate whether coverage for "bodily injury" potentially is available, and if so, whether it exists under the settled approaches reflected in Wayne Township or Jakupko, or whether consideration of coverage under a Shuamber or Groves scenario must be undertaken. In other words, there clearly is parallel litigation which will inform the inquiry presented by State Farm's request for declaratory judgment.

Moreover, an adjudication of State Farm's complaint at this juncture would not resolve the uncertainty of obligation that gives rise to State Farm's "predicament." An adjudication of the declaratory judgment claim would resolve State farm's coverage obligations without a factual determination of the facts as the jury finds them to be in the underlying negligence/NIED claim. Such an undertaking runs the real risk of either being inchoate and remaining open until the parallel case is concluded or being a premature adjudication that truly has the potential to give

---

[3] In contrast, the non-existence of pending parallel state proceedings militates significantly in favor of exercising jurisdiction, although this factor likewise does not dictate that a court do so. Id.

rise to a new round of litigation founded on the existence of inconsistent determinations of fact. Proceeding in such a matter does not appear to reflect sound "considerations of practicality and wise judicial administration."

An adjudication of the declaratory judgment claim will not be more convenient for the parties. Both the Edwards and Karen Biddle are parties to the parallel state court case. State Farm essentially is present in that action because it is required to defend Dawn Edwards until it can confine the claims in that case to ones that are beyond the potential scope of coverage. This would appear to require State Farm to provide representation throughout the duration of the parallel proceeding. And State Farm is no stranger to litigation in the Court of Common Pleas of Allegheny County in any event. Thus, proceeding with the instant action does not appear to be more convenient or advantageous to any of the parties.

Moreover, the public interest in the resolution of uncertainty of obligation and relative ease and convenience of proceeding in state court do not favor the exercise of jurisdiction in federal court. As noted above, proceeding with the declaratory judgment claim at this juncture appears to put the cart before the horse. A determination of whether Karen Biddle's NIED claim is viable under Indiana law, and if so, whether the claim presents a settled form of bodily injury or a sound basis for extending the scope of coverage to the facts would either constitute a preliminary determination that would not definitively resolve the matter or an adjudication based on disputed facts that have not been definitively resolved by a jury, thereby leaving a specter regarding the need for reopening or additional litigation. And proceeding simultaneously in two forums would not appear to be convenient for the parties or reflect the sound use of judicial resources.

In addition, adjudicating the matter as requested by State Farm appears to be in direct conflict with its duty to defend in the parallel action. It is beyond reproach that it must defend Dawn Edwards unless and until it obtains a declaration that the claims are outside the scope of coverage. That cannot be said to be the case at this juncture and proceeding with the instant

15

declaratory judgment action seeks to eliminate State Farm's duty to defend based on a resolution of facts that remain in dispute in the underlying negligence/NIED claim. This inherent conflict weighs in favor of declining to exercise jurisdiction.

None of the general factors weigh in favor of exercising jurisdiction under the DJA. And doing so is tantamount to maintaining duplicative proceedings to resolve common questions of fact.

The specific factors under Summy likewise counsel in favor of declining jurisdiction. As Judge Weis observed in Summy, the applicable Third Circuit and Supreme Court "precedents counsel hesitation by federal courts in exercising jurisdiction over declaratory judgment actions when the state law involved is close or unsettled." Summy, 234 F.3d at 135. And where the state law is firmly established, there is even less reason for resort to the federal courts. Id. at 136. Furthermore, where no federal interests are promoted by entertaining the declaratory judgment action and there is a state court decision in existence that directly involves the coverage dispute, entertainment of the federal declaratory judgment suit boarders on the "vexatious" and "gratuitous interference" descriptions used by the Supreme Court in Brillhart. Such circumstances readily support a decision to decline jurisdiction sua sponte, particularly where there is underlying litigation in the state court case that will have a direct bearing on the parties' coverage dispute and will inform the outcome of the parties' disagreement.

Here, all of these considerations counsel in favor of dismissal. Importantly, no federal interest is implicated by the parties' dispute. The court is not called upon to consider a claim or defense controlled or influenced by federal law. There are no issues of federal statutory interpretation; the government is not involved and has not selected this forum; there is no issue of sovereign immunity; nor is there any claim of inadequacy of the state proceeding. The lack of such an interest creates an important factor militating against the exercise of jurisdiction. Summy, 234 F.3d at 136.

In contrast, judicial economy will be served by permitting the case in state court to proceed, which is not to be overlooked in making an assessment of practicality and wise judicial administration. See Summy, 234 F.3d at 135-36 ("Judicial efficiency was not promoted when the District Court also considered this evidence, as it inevitably had to when deciding the federal declaratory judgment action. If the District Court had not interfered, the state court would have been able to develop a coordinated schedule of briefing and discovery that would have promoted the efficient resolution of both the declaratory judgment action and the underlying tort action, thereby conserving judicial resources as well as those of the parties."); accord Atlantic Mut. Ins. Co. v. Gula, 84 F. App'x 173, 174 (3d Cir. 2003) (where a declaratory judgment action is premised on the potential availability of insurance coverage, "[t]he central question is whether the controversy may better be settled in the state court.") (quoting Pa. Dep't of Envirtl. Res., 923 F.2d at 1075)). The adjudication of the facts underlying Karen Biddle's NIED claim will permit the state court to administer the proceeding on its docket. That adjudication will in turn inform the dispute presented by the instant action. In all likelihood it will supply final determinations of critical facts that will make the adjudication of the coverage issue more efficient. And in doing so it may even avoid a foray into an unsettled area of Indiana law. At the very least, it will provide a level of certainty that will guide the adjudication of State Farm's contention that any recovery on Biddle's NIED claim will be beyond the scope of coverage for bodily injury under Indiana law.

Moreover, the fact that the coverage dispute does not turn on the substantive law of Pennsylvania does not provide justification for proceeding with the declaratory judgment claim in federal court. In the first instance, Indiana law becomes the governing law only by application of Pennsylvania's law governing "choice of law" provisions in an insurance policy. See Plaintiff's Response in Opposition at 5 n. 1. It follows that Pennsylvania law must be consulted and applied. Second, the Pennsylvania courts have an interest is adjudicating the personal injury claims brought by its citizens and involving accidents occurring within the state. Third, the Court of Common

Pleas of Allegheny County is as capable as this court in ascertaining and applying the law that ultimately governs Biddle's personal injury claims and the dependent coverage disputes. Finally, the practical ease and conservation of judicial resources gained by declining jurisdiction and permitting a single judge to administer both the underlying tort case and the coverage issues that remain at its conclusion speak volumes and easily displace any inference that the Court of Common Pleas of Allegheny County is not a proper forum for resolution of plaintiff's declaratory judgement action. <u>Summy</u>, 234 F.3d at 135-36 (judicial efficiency is not promoted when a district court is called upon to consider the very evidence that is subsumed within the parallel state court case and make findings that will be informed by if not made in the state court).

The exercise of this court's discretion to exercise jurisdiction under the DJA is governed by considerations of practicality and wise judicial administration. "A federal court should [] decline to exercise its discretionary jurisdiction when doing so would promote judicial economy by avoiding duplicative and piecemeal litigation." <u>Summy</u>, 234 F.3d at 135. That is precisely the result that flows from declining jurisdiction and permitting the Allegheny County Court of Common Pleas to proceed with the parallel proceeding.

For the reasons set forth above, this court will decline to exercise its jurisdiction under the Declaratory Judgment Act and dismiss this action. The dismissal will be without prejudice to State Farm being able to file or raise its declaratory judgment claim in the Court of Common Plea of Allegheny County, Pennsylvania. An appropriate order will follow.

<u>Date: January 19, 2016</u>

                                               <u>s/David Stewart Cercone</u>
                                               David Stewart Cercone
                                               United States District Judge

cc:     Michael A. Weiner, Esquire
        Ralph M. Monico, Esquire
        (*Via CM/ECF Electronic Mail*)